UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GRETCHEN EISENACH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 13-CV-82-JED-PJC |
| | ) |
| LIFE INSURANCE COMPANY OF | ) |
| NORTH AMERICA, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter comes before the Court as a result of a dispute between the parties as to whether plaintiff, Gretchen Eisenach, has exhausted her administrative remedies as required in cases governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 2202 *et seq*. ("ERISA"). A telephonic hearing was held on June 17, 2013, where the Court directed the parties to file briefs regarding exhaustion. Supplemental briefs were submitted by the defendants jointly (Doc. 37) and by the plaintiff (Doc. 38). The defendants also agreed during the June 17 hearing that the time for plaintiff's filing of an administrative appeal, if necessary, would be tolled pending the Court's ruling as to exhaustion.

In addition, plaintiff has filed a Motion for Partial Summary Judgment Determining Standard of Review (Doc. 17). In response, the defendants jointly filed a Motion to Strike Plaintiff's Motion for Partial Summary Judgment Determining Standard of Review or in the Alternative to Hold Plaintiff's Motion in Abeyance (Doc. 20). The defendants request that the Court strike plaintiff's partial summary judgment motion as procedurally improper or, in the alternative, defer its decision regarding the standard of review until its final decision on the merits.

**Factual Background**

Plaintiff is a participant in the defendant Fox Long Term Disability Plan (the "Plan"). (Doc. 37-1, at 888). Defendant Fox Entertainment Group, Inc. ("Fox") is the Plan Sponsor and Plan Administrator. (Doc. 37-2). Defendant Life Insurance Company of North America ("LINA") issued a group insurance policy (the "Policy") to insure benefits under the Plan. As the underwriter for the Policy, LINA is likewise responsible for interpreting the Policy's provisions, determining claims and appeals, and paying benefits. (*Id*.).

On November 4, 2008, Eisenach was severely injured as a result of being struck by a vehicle while walking in a crosswalk. She suffered profound physical and mental impairment as a result of the accident and made a claim through her conservator[1] for long-term disability benefits under the Plan in early 2009. LINA approved her claim and in May of 2009, Eisenach began receiving monthly benefit checks of approximately $5,555. In May of 2011, LINA became aware that Eisenach had entered into a settlement agreement with the driver of the vehicle that caused her injuries for the limits of his liability policy, $250,000. After fees and costs, plaintiff's net tort recovery amounted to $142,035.49 – a drop in the bucket as compared to her actual damages according to plaintiff, which she estimates to be well into the seven figure range.

Of critical importance to the instant litigation is the fact that the Policy contains an offset provision entitled "Other Income Benefits." Under that provision, LINA is entitled to reduce long-term disability benefits in the event of the insured's receipt of "any amounts paid because of loss of earnings or earning capacity through settlement …where a third-party may be liable. . . ." (Doc. 37-2, at 12). The Policy also provides that, "[i]f no specific allocation of a lump sum is

---

[1] Plaintiff's mother, Valerie Eisenach, is plaintiff's conservator pursuant to a February 17, 2009 court order.

made, then the total payment will be an Other Income Benefit." (*Id*., at 13). Accordingly, LINA's Disability Claim Manager, Leon Farmer, requested information relating to the settlement to determine whether the agreement allocated any part of the settlement to specific items or losses. In August of 2011, LINA was advised that Plaintiff's net settlement amount totaled $142,035.49. LINA also learned that none of this amount was explicitly allocated to any specific item or loss in the settlement agreement. On September 23, 2011, a LINA recovery specialist, Jennifer Korpics, advised Eisenach via letter that Eisenach had allegedly been overpaid in the sum of $56,520.62 and demanded reimbursement to LINA for the overpayments. In addition, the September 23 letter provided a computation of the claimed overpayment and informed Eisenach that her benefits would be reduced by $2,367.26 per month through February 23, 2014. This letter made no mention of an appeal. In an October 19, 2011 letter, Eisenach, through her counsel, objected to LINA's intent to reduce benefit payments and advised LINA that she did not intend to reimburse LINA for the overpayment. The October 19, 2011 letter further stated:

> Our client disputes the Plan's reimbursement/subrogation claims with respect to the tort recovery referenced in your letter of September 23rd. Hence, she respectfully declines to send the "check or money order" requested. Further, she disputes the Plan's decision to reduce her monthly disability payments on account of that recovery and demands that they be reinstated to their full amount, save and except for lawful reductions related to her SS benefits.
>
> *So that we may perfect an appropriate administrative appeal of your decision, we ask that you promptly send to this office the complete administrative record upon which it is based*. To facilitate references thereto in our future discussion(s), please Bates-stamp it.
>
> *Pending our receipt of the record and perfection of our administrative appeal*, we remain receptive to reasonable offers in compromise.

(Doc. 37-1, at 382, italics added). LINA did not respond with any statement that an administrative appeal would be premature or otherwise inappropriate, and instead provided documents responsive to plaintiff's counsel's request and stated that LINA would "be glad to

3

review any information you submit in support of your position." (Doc. 37-1, at 357 and 368). On February 24, Ms. Korpics sent a letter to plaintiff stating that, because the $56,520.62 had not be repaid, LINA intended to withhold the remainder of the monthly disability benefits Eisenach was receiving – $3,187.74 – until the full amount had been repaid.

On March 5, 2012, without having yet seen the February 24 letter from Ms. Korpics[2], plaintiff's counsel sent a letter to Ms. Kropics and Mr. Farmer, which plaintiff contends was her substantive appeal of an adverse benefit determination. Plaintiff's counsel's March 5 letter spans four pages and details Eisenach's position as to why her benefit reduction was improper. The letter states that it is written in response to LINA's September 23, 2011 letter (which initially reduced Eisenach's benefits), and further states:

> As a preliminary matter, though [LINA]'s aforesaid letter is not a claim denial per se, we have nonetheless endeavored to respond to it within the 180 day time normally afforded plan participants in appealing administrative claim denials.

(Doc. 37-1, at 352-55). Plaintiff disagreed with the notion that LINA was entitled to reimbursement or to recover any overpayment and further demanded that her benefits be restored and that she be reimbursed for amounts previously withheld. Plaintiff's counsel further asserted that the summary plan description ("SPD") she received in connection with the Plan was deficient because it did not list third-party settlements related to lost earnings as "Other Income Benefits" that would be offset against long-term disability benefits and because it failed to inform Eisenach that she had the right to allocate the lump sum settlement benefits to something other than lost earnings, which LINA presumed them to be under the Policy. (*See id.*).

On March 7, 2012, plaintiff's counsel sent a letter to Ms. Korpics regarding her February 24, 2012 letter, beseeching LINA not to follow through with its plan to reduce plaintiff's benefit

---

[2] Plaintiff's counsel's letter of March 7, 2012 states that the postal employee delivered the February 24 letter as he was picking up the outgoing March 5 letter. (Doc. 37-1, at 350).

payments to zero in order to satisfy the alleged $56,520.62 overpayment. Additionally, the letter stated:

> My question is this: where does [LINA] perceive us to be regarding the mandatory administrative review process – assuming there is one that applies to this situation? The LTD SPD describes the normal claim/denial/appeal process starting at page 13, but that language refers to a detailed "written notice of denial" that our client has never received – presumably because, as stated, this is not a claim denial as such. ERISA requires that [LINA] inform [plaintiff] of those steps necessary to exhaust her administrative remedies, so I am asking whether [LINA] contends there are additional steps to take at this level. If so, what are they? If not, and if [LINA] will not otherwise reconsider it's [sic] decision, then the time for judicial review is upon us.

(Doc. 37-1, at 350). LINA never responded with a statement as to what it perceived to be the status of Eisenach's claim, that is, whether she was in the process of an appeal or some other unspecified type of review. Instead, on March 14, 2012, Mr. Farmer sent plaintiff's counsel a letter notifying Eisenach that LINA would not be withholding benefits to recoup the overpayment, but that the existing offset would remain in place. Additionally, Mr. Farmer requested that Plaintiff's counsel provide him with the SPD referenced in his March 5, 2012 letter so that LINA could fully address the issues raised by Plaintiff. Thereafter, having received the SPD as requested, Mr. Farmer informed Eisenach on April 6, 2012 that "[a] review has started regarding the offset for Ms. Eisenach's auto settlement" and further stated that "I anticipate a decision can be reached in 60 days and will advise you of the decision when reached." (Doc. 37-1, at 315).

Within that timeframe, a significant amount of additional correspondence was exchanged between LINA and Eisenach. Mr. Farmer continued to keep plaintiff's counsel informed regarding the status of the matter and his difficulty in obtaining information from Liberty Mutual regarding the auto settlement. On August 16, 2012, Mr. Farmer sent a letter stating that he had received the information from Liberty Mutual and that "[w]e are not able to start our review

5

process regarding the long term disability offset. I anticipate having our decision rendered within 60 days of this letter." (Doc. 37-1, at 293). In addition, in a November 29, 2012 letter, plaintiff's counsel submitted to LINA supplemental information regarding, among other things, Eisenach's monthly medical expenses. In that letter, plaintiff's counsel made clear that he perceived the provided information to be "[s]upplementing Ms. Eisenach's appeal of [LINA]'s adverse benefit determination." (Doc. 37-1, at 255). LINA's next contact with plaintiff's counsel – a December 21, 2012 letter noting that "review of the offset dispute" had been completed – expressed no objection to the November 29, 2012 letter's characterization of the ongoing process as an appeal. (*See* Doc. 37-1, at 254).

On January 4, 2013, some nine months after the initial benefit reduction, Mr. Farmer notified plaintiff's counsel by letter that LINA was sticking with its initial decision that the settlement would be considered "Other Income Benefits" under the Policy and therefore subject to offset. (Doc. 37-1, at 250-52). The January 4 letter also stated that Eisenach would be required to administratively appeal the decision under ERISA prior to the filing of any legal action. Apparently disagreeing that such an appeal had not already been perfected, Eisenach filed this litigation on January 7, 2013 in Tulsa County District Court. On February 11, 2013, the case was removed to this Court.

**Analysis**

Although ERISA does not contain any express provisions requiring exhaustion of administrative remedies, the Tenth Circuit has held that "exhaustion of administrative remedies (i.e. company- or plan-provided) is an implicit prerequisite to seeking judicial relief." *Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197, 1206 (10th Cir. 1990). This doctrine prevents "premature judicial interference with the interpretation of a plan [that] would impede

6

those internal processes which result in a completed record of decision making for a court to review." *Whitehead v. Oklahoma Gas & Electric Co.*, 187 F.3d 1184, 1190 (10th Cir. 1999).

A would-be plan beneficiary's time to appeal is generally triggered by an "adverse benefit determination." *See Sawyer v. USAA Ins. Co.*, 912 F. Supp. 2d 1118, 1152 (D.N.M. 2012); 29 C.F.R. § 2560.503-1(h) (governing "[a]ppeal of adverse benefit determinations"). The definition of an "adverse benefit determination" is significantly broader than a complete denial of benefits. Under ERISA's regulatory framework, an "'adverse benefit determination' means any of the following: a denial, *reduction*, or termination of, or a *failure to provide or make payment (in whole or in part)* for, a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan…." 29 C.F.R. § 2560.503–1(m)(4) (italics added); *see also Cherene v. First Am. Fin. Corp. Long-Term Disability Plan*, 303 F. Supp. 2d 1030, 1036 (N.D. Cal. 2004) ("A withholding of a benefit – even if done to compensate for a claimed reimbursement – is either a 'reduction' or 'failure to provide or make payment (in whole or in part) for, a benefit'.") (quoting 29 C.F.R. § 2560.503–1(m)(4)); *Fletcher v. Comast Comprehensive Health & Welfare Plan*, 2011 WL 743459 (W.D. Pa. Feb. 24, 2011) (noting that an underpayment of benefits is "just like a denial" because it "is adverse to the beneficiary and therefore repudiates his rights under a plan") (quoting *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 521 (3d Cir. 2007)).

### I.   LINA's Adverse Benefit Determination

The defendants make no attempt to directly characterize LINA's September 23, 2011 decision to reduce Eisenach's long-term disability benefit payment and request for reimbursement. Instead, LINA implies that it was not an adverse benefit determination by

pointing out that the January 4, 2013 letter contained all of the content required for a "written notice of denial" under the Policy and SPD. (*See* Doc. 3, at 13-14 and 18). While it is true that the January 4 letter did contain the information designated for initial claim decisions, it does not necessarily follow that LINA's initial reduction of Eisenach's benefits was not an adverse benefit determination.

This case does not present the typical example of an outright denial of benefits. Based upon LINA's determination that Eisenach's personal injury settlement constituted "Other Income Benefits," LINA reduced Eisenach's monthly payment by $2,367.26 per month. This action constitutes a reduction or failure to make a payment, at least in part, under 29 C.F.R. § 2560.503–1(m)(4) and the authorities construing it, which the Court finds persuasive on this issue. As an adverse benefit determination, LINA's reduction of Eisenach's benefits triggered her right to an appeal.[3] However, it remains to be determined whether Eisenach's counsel's correspondence with LINA amounted to an appeal under the Policy and relevant law.

## II.     Eisenach's "Appeal"

The Policy under which Eisenach's long-term disability benefits were paid states the following with respect to the "Appeal Procedure for Denied Claims":

> Whenever a claim is denied, you have the right to appeal the decision. You (or your duly authorized representative) must make a written request for appeal to the Insurance Company within 60 days (180 days in the case of any claim for disability benefits) from the date you receive the denial. If you do not make this request within that time, you will have waived your right to appeal.
>
> Once your request has been received by the Insurance Company, a prompt and complete review of your claim must take place. This review will give no deference to the original claim decision, and will not be made by the person who made the initial claim decision. During the review, you (or your duly authorized representative) have the right to review any documents that have a bearing on the

---

[3] The Court makes no finding with respect to whether LINA's September 23, 2011 letter constitutes written notice which complies with the terms of the Policy.

> claim, including the documents which establish and control the Plan. Any medical or vocational experts consulted by the Insurance Company will be identified. You may also submit issues and comments that you feel might affect the outcome of the review.
>
> The Insurance Company has 60 days from the date it receives your request to review your claim and notify you of its decision (45 days, in the case of any claim for disability benefits). Under special circumstances, the Insurance Company may require more time to review your claim. If this should happen, the Insurance Company may require more time to review your claim. If this should happen, the Insurance Company must notify you, in writing, that its review period has been extended for an additional 60 days (45 days in the case of any claim for disability benefits). Once its review is complete, the Insurance Company must notify you, in writing, of the results of the review and indicate the Plan provisions upon which it based its decision.

(Doc. 37-2, at 33). The Policy contains no further statements regarding what the content of the "written request for appeal" should be. In addition, no statute or federal regulation has delineated what the form or content of an appeal of an adverse benefit determination must be. However, the Tenth Circuit and other courts have provided guidance with respect to what form such an appeal should (and shouldn't) take. For example, in *Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1019 (5th Cir. 2009), the court held that a letter merely stating that the plaintiff had an intention of appealing the plan administrator's decision, but which included "no factual or substantive arguments, and no evidence," did not constitute an appeal because there was nothing for the plan administrator to consider on appeal. *See also Holmes v. Proctor & Gamble Disability Benefit Plan*, 228 F. App'x 377, 379 (5th Cir. 2007) (unpublished) (holding that the plaintiff "did not substantially comply with the Plan's appeal procedures [because he] stated only his intent to appeal the Plan's decision at some time in the future").

*Kellogg v. Metropolitan Life Ins. Co.*, 549 F.3d 818 (10th Cir. 2008) is particularly instructive regarding whether Eisenach's counsel's actions perfected an appeal in this case. In

*Kellogg*, defendant Metlife argued that Kellogg had not perfected an appeal within the time allotted under her policy. *Id*. at 826. In support of its contention, Metlife pointed out that Kellogg's counsel had sent a letter stating that they would "submit Kellogg's appeal 60 days after they received the requested claim file documents," but no additional letter was ever received from Kellogg or her counsel. *Id*. The Tenth Circuit rejected Metlife's argument, noting that the letter Metlife received – even though it noted an appeal would be forthcoming once documents were received by Kellogg – did state that Kellogg was "appealing the decision to deny payment of benefits" and outlined the "general basis for Kellogg's appeal." *Id*. In addition, the court stated the following:

> Considered *as a whole*, there can be no doubt that the January 17, 2006 letter *provided MetLife with notice that Kellogg disagreed with and was appealing MetLife's decision to deny her AD & D benefits, and was also requesting from MetLife relevant documentation*, including the SPD, Certificate of Insurance, and relevant medical and non-medical reports, in order to support her appeal. Thus, MetLife clearly had a responsibility under ERISA to provide Kellogg's counsel with a copy of the latest SPD and plan documentation, *see* 29 U.S.C. § 1024(b)(4), and, ultimately, to issue a decision on Kellogg's appeal….

*Id*. at 827 (italics added). Thus, if the party's actions, when considered as a whole, manifest an intent to appeal and provide the substance of the party's position as to why the adverse benefit determination should be reviewed, the party can be said to have appealed. *See id*.

When Eisenach's counsel's October 19, 2011 and March 5, 2012 letters are viewed together, it is evident that the March 5 letter constituted an appeal in line with *Kellogg*'s reasoning. As noted, in his October 19 letter, Eisenach's counsel expressed no objection to LINA's decision and requested a complete copy of the administrative record from Ms. Korpics "[s]o that we may perfect an appropriate administrative appeal of [LINA's] decision." (Doc. 37-1, at 382). LINA complied and submitted documentation to Eisenach without indicating that an appeal would be inappropriate. In the March 5 letter, Eisenach's counsel stated that, although

10

there had not been a claim denial in the ordinary sense, they had endeavored to appeal within the 180 day limit for such appeals – as was forecasted in the October 19 letter. In addition, this letter provided LINA with Eisenach's substantive arguments as to why she believed LINA's benefit offset decision was incorrect.[4] At no time, other than its final January 4, 2013 letter, did LINA ever attempt to inform Eisenach that it believed the process in which she was participating was not appeal.[5]

LINA apparently agreed with the Court's conclusion at one time. As Eisenach points out, LINA – the defendant with whom Eisenach dealt directly regarding the benefit offset – stated in its answer to Eisenach's petition that it "*admits* that Plaintiff appealed LINA's decision." (Doc. 11, at ¶ 18, italics added).[6] In addition, LINA pled no affirmative defenses related to an alleged failure to exhaust administrative remedies or satisfaction of any condition precedent. LINA has

---

[4] In addition, Eisenach's counsel's November 29, 2012 letter noted that it was supplementing her "appeal." (Doc. 37-1, at 255). Again, no objection was made by LINA with respect to this characterization.

[5] LINA argues that Eisenach's efforts were not an appeal because, if it had been, it would have been handled by a separate and independent reviewer. (*See* Doc. 37, at 17). This argument is unpersuasive for two reasons. First, plaintiff could have easily assumed that LINA was failing to follow its own guidelines, which would not result in her actions being characterized as something other than an appeal. Second, LINA's actions could have been perceived as following its guidelines for separate and independent review. It was Ms. Korpics who notified Eisenach via letter that an offset would be occurring and what LINA's calculations were with respect to that offset. (Doc. 37-1, at 311). Thereafter, it could have appeared to Eisenach that Mr. Farmer was tasked with reviewing Ms. Korpic's decision, as he became more involved once Eisenach's counsel expressed an intent to appeal the decision in his October 19 letter. (*See, e.g.*, Doc. 37-1, at 342, 357, 359, 361, and 368). In any event, as noted above, if LINA failed to follow the Policy, it would not reduce Eisenach's efforts to something less than an appeal. *See Kellogg, supra*.

[6] The two Fox defendants stated that they lacked sufficient knowledge as to whether plaintiff had submitted an administrative appeal and therefore denied that allegation in plaintiff's petition "upon information and belief." (Doc. 14, at ¶ 18). They also pled the following defense: "To the extent Plaintiff failed to satisfy all of the conditions precedent to filing suit, her claims are barred." (*Id.*, at p. 7).

not sought to amend its answer to assert such defenses or otherwise deny that Eisenach appealed its adverse benefit determination. Instead, LINA decided that Eisenach had not submitted an administrative appeal once Eisenach filed her motion for partial summary judgment (Doc. 17) which seeks a de novo review of LINA's benefit determination on the basis that her appeal took approximately nine months instead of the 90-day maximum to which she was entitled under the Policy. (*See id*.). In a footnote in its motion to strike the motion for partial summary judgment, LINA indicated for the first time in this case that it believed Eisenach has not submitted an appeal. This change of course has resulted in a significant expenditure of time and effort by the parties and the Court, and could have easily been avoided had LINA been clear about its position throughout the course of its dealings with Eisenach and her counsel.

As a final issue, the defendants suggest in a footnote on the last page of their brief that, even if the Court finds plaintiff submitted an administrative appeal, she has still not exhausted her administrative remedies because she was told in the January 4, 2013 letter that she could appeal the decision, but did not do so. Arguments such as this, raised solely in a footnote, are generally waived. *Hill v. Kemp*, 478 F.3d 1236, 1255 n.21 (10th Cir. 2007) ("We will not consider an argument raised in such a perfunctory manner."); *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1122 (10th Cir. 2004) (issue raised only in footnote before trial court deemed waived); *see also Echols v. Astrue*, 2009 WL 1606497 (W.D. Okla. June 8, 2009) (declining to consider argument raised solely in a footnote). Even assuming the argument had been properly raised, it would be unavailing. There is no controlling authority, nor statute or regulation, which imposes a requirement upon Eisenach that multiple appeals be pursued for her administrative remedies to be exhausted. The cases cited by the defendants, *Getting v. Fortis Benefits Insurance Co., Inc.,* 108 F.Supp.2d 1200, 1202-1203 (D. Kan. 2000) and *Wilczynski v. Kemper*

*National Insurance Co*., 998 F.Supp. 931, 944-945 (N.D. Ill. 1998), are distinguishable from this case. In both of those cases, the policy goals of ERISA would have been furthered by an additional appeal through further development of the administrative record and the parties' respective positions. *See Getting*, 108 F. Supp. 2d 1203-04 ("Although the court declines to hold that a request for reconsideration is always necessary in ERISA cases, requiring plaintiff to do so here would serve the purposes underlying the exhaustion requirement."); *Wilczynski*, 998 F. Supp. at 945 (noting that plaintiff's counsel had refused to review the pertinent documents on which the claim denial was based, despite numerous opportunities to do so). Here, the goals of exhaustion would not be served by a secondary appeal in this case, as it does not appear that further meaningful development of the administrative record would have resulted from a second appeal. In addition, the Policy speaks in terms of a singular appeal and makes no representations regarding a second appeal. Moreover, LINA has not represented that it is the company's practice to require more than one appeal of an adverse benefit determination.

Based upon the foregoing, it is the finding of the Court that Eisenach timely submitted an administrative appeal of LINA's adverse benefit determination and that no further administrative appeal is necessary.

**Defendants' Motion to Strike**

Plaintiff's Motion for Partial Summary Judgment Determining Standard of Review (Doc. 17) seeks a preliminary determination regarding the standard of review so that the parties' opening briefs can be tailored to whichever standard the Court determines to be applicable. In response, the defendants filed their Motion to Strike Plaintiff's Motion for Partial Summary Judgment Determining Standard of Review or in the Alternative to Hold Plaintiff's Motion in Abeyance (Doc. 20). The defendants argue that the plaintiff's motion is procedurally defective,

as summary judgment process is generally not used in ERISA litigation. In the alternative, the defendants request that the Court defer its decision regarding the proper standard of review until its final decision on the merits.

While it is true that Rule 56, which governs summary judgment, is facially inapplicable to ERISA proceedings, the Court declines to strike plaintiff's motion for summary judgment as it was not filed in derogation of the Federal Rules of Civil Procedure and is not scandalous, impertinent, harassing, or otherwise worthy of being stricken. However, the Court finds that its decision regarding the proper standard of review should be deferred until its final decision on the merits. Parties routinely argue the appropriate standard of review in opening briefs in ERISA litigation. This provides the Court the benefit of having a complete administrative record before it prior to deciding the issue. In addition, it is not especially burdensome for the parties to make alternative arguments depending on which standard of review it anticipates may be applied.

**IT IS THEREFORE ORDERED** that defendants' Motion to Strike Plaintiff's Motion for Partial Summary Judgment Determining Standard of Review or in the Alternative to Hold Plaintiff's Motion in Abeyance (Doc. 20) is **granted in part**. The Court's decision regarding arguments raised in plaintiff's motion for partial summary judgment (Doc. 17) will be held in abeyance until the Court's final decision on the merits in this case. The defendants are directed to respond to the substance of plaintiff's standard of review arguments in their opening briefing.

**IT IS FURTHER ORDERED** that it is this Court's determination that plaintiff has perfected a timely administrative appeal of the defendant's adverse benefit determination and that no further administrative appeal by plaintiff is necessary.

**SO ORDERED** this 19th day of August, 2013.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE